IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (CLEVELAND)

| | | |
|---|---|---|
| THE CONTINENTAL INSURANCE COMPANY<br>151 North Franklin Street<br>Chicago, Illinois 60606<br><br>    Plaintiff,<br><br>v.<br><br>RB&W MANUFACTURING, LLC<br>6065 Parkland Boulevard<br>Cleveland, OH 44124<br><br>    Service:<br>    Corporation Service Company<br>    3366 Riverside Drive, Suite 103<br>    Upper Arlington, Ohio 43221<br><br>    Defendant. | : : : : : : : : : : : : : : : : : : : : | No:<br><br>Judge<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

1. The Continental Insurance Company ("Continental") files this breach of contract and declaratory judgment case against RB&W Manufacturing, LLC ("RBW") as successor to the Russell, Burdsall & Ward Corporation ("Russell Burdsall") and RB&W Corporation ("RBW Corporation").

2. This lawsuit concerns nine primary and excess insurance policies issued by Continental to Russell Burdsall or RB&W Corporation as named insureds. These policies and the relevant corporate history of RBW are outlined below.

3. RBW has been named a potentially responsible party ("PRP") for environmental liabilities at a contaminated property in Indiana known as the McCray Refrigerator Company site ("Site").

4. RBW has sought defense and indemnity under the Continental policies for the McCray Site environmental liabilities.

5. Continental has denied coverage for the McCray environmental contamination liabilities because the Continental policies exclude pollution claims, among other issues.

1

## II. VENUE AND JURISDICTION

6. Under 28 U.S.C. §1391(b)(2), venue is proper because a substantial part of the events giving rise to this dispute occurred in Cuyahoga County, Ohio or Lake County Ohio.

7. Specifically, the following events have occurred in Cuyahoga or Lake Counties:

    a. RBW is headquartered in Cleveland, Ohio according to its SEC filings and corporate website.

    b. Continental issued insurance contracts to Russell Burdsall or RBW Corporation at addresses that were in Mentor, Ohio in Lake County or in either Brooklyn Heights, Ohio or Cleveland, Ohio, both in Cuyahoga County.

    c. The insurance broker who assisted policy negotiation was located in Cleveland, Ohio in Cuyahoga County.

    d. RBW has responded to an administrative investigation by state environmental authorities by stating that it has no Indiana operations and no employees who are aware of historic operations at the McCray Site.

8. Under 28 U.S.C. §115(a)(1), federal venue lies in the Northern District of Ohio in this Court's Eastern Division in Cleveland based upon these Cuyahoga County and Lake County contacts.

9. Under Article III of the United States Constitution, this Court has jurisdiction over breach of contract matters meeting the statutory diversity and amount in controversy requirements.

10. Under 28 U.S.C. §1332(a), the matter in controversy for this dispute exceeds $75,000.00 exclusive of interest and costs based upon the defense costs anticipated for the defense of IDEM enforcement action at the Site and for Site cleanup, both of which exceed the jurisdictional minimum.

11. Under 28 U.S.C. §1332(a)(1), Continental is diverse from both defendants as follows:

    a. Continental is a corporation organized under Pennsylvania law with a principal place of business in Illinois.

    b. RBW is a limited liability company organized under Ohio law with a principal place of business in Ohio and a sole member located in Ohio.

12. Under 28 U.S.C. §2201, et seq., there is an actual controversy between Continental, and RBW because RBW has demanded that Continental defend or indemnify it for matters arising at the Site under insurance contracts which contain pollution exclusions and Continental has denied coverage.

13. This case presents a live and justiciable controversy because Continental asserts that the terms, conditions, and exclusions of its policies do not provide coverage for defense or indemnity for environmental contamination at the Site.

14. RBW disputes the defense and indemnity position taken by Continental.

### III. FACTUAL NARRATIVE

#### A. IDEM PRP Letter

15. On September 17, 2021, the Indiana Department of Environmental Management ("IDEM") identified RBW as a PRP at the McCray Site under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") ("PRP Letter").

16. The September 17, 2021 PRP Letter is attached as Exhibit 1.

17. The PRP Letter is addressed to "R B & W, Inc. (formerly Russell, Burdsall & Ward, Inc.)." See Ex. 1 at p. 1.

18. On October 15, 2021, RBW responded to the PRP Letter ("RBW Response").

19. The RBW Response, with an Information Request Response it enclosed, is attached as Exhibit 2.

20. The additional documents RBW provided with its RBW Response are not attached to Exhibit 2 because they are too voluminous.

21. Corporate history is outlined below, but within the October 15, 2021 RBW Response, RBW represented that it answered IDEM for RB&W Corporation, formerly known as Russell, Burdsall & Ward, Inc. See Ex. 2, Information Request Response ¶ 1.

22. Within the RBW Response, RBW represented that RBW Corporation was acquired by Park-Ohio in 1995 and has no successor in interest. See Id. at ¶¶ 2 and 4.

23. According the records maintained by the Ohio Secretary of State, RBW is successor by merger to RBW Corporation. A copy of the October 31, 1998 Certificate of Merger evidencing this transaction is attached as Exhibit 3.

24. The PRP Letter notifies RBW of "potential environmental liability at the McCray Site." See Ex. 1 at p. 2.

25. The PRP Letter states that IDEM has determined that a release or threat of release of hazardous substances has occurred at the Site and informs RBW that it is a PRP under CERCLA. See Id.

26. According to IDEM files, an environmental assessment of the Site and knowledge of contamination began as early as 2014. See Letter from P. Dorsey to S. Derby dated Oct. 30, 2019 at p. 3 (Ex. 4 hereto).

27. In the October 15, 2021 RBW Response Letter, RBW acknowledged that it acquired certain assets in 1981 that include possible operations at the Site. See Response Letter, Information Request Response at ¶2 (Ex. 2).

28. In the Response Letter, RBW acknowledges that it sought a permit to install a degreaser that was capable of using trichloroethene ("TCE") at the Site in 1982, but denied that it contributed to TCE contamination at the Site. See Id. at ¶9.

29. In the Response Letter, RBW claims to have no current employees aware of any operations conducted at the Site. See Id. at ¶2.

30. In the Response Letter, RBW claims that it knows that it had no operations at the Site in 1995, and does not know when its operations were discontinued there. See Id.

**B.  Insurance Policies**

31. Continental issued nine primary and excess insurance policies to Russell, Burdsall & Ward Corporation or RB&W Corporation. The best available copies of those policies are:

    a. Policy SRL 3 63 29 31 (7/1/81 – 7/1/82), insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 5;

    b. Policy SRL 3 63 29 72 (7/1//82 – 7/1/83) insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 6;

    c. Policy SRL 3 63 30 04 (7/1/83 – 7/1/84), insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 7;

    d. Policy SRL 3 63 30 34 (7/1/84 – 7/1/85), insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 8;

    e. Policy SRL 3 63 30 70 (7/1/85 – 7/1/86), insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 9;

    f. Policy SRU 1 89 14 95 (7/1/85 – 7/1/86), insuring Russell, Burdsall & Ward Corporation as the named insured, attached as Exhibit 10;

    g. Policy SRL 3 63 31 19 (7/1/86 – 7/1/87), insuring RB&W Corporation, attached as Exhibit 11;

    h. Policy SRL 9 50 09 61 (7/1/87 – 7/1/88), insuring RB&W Corporation, attached as Exhibit 12.

  i. Policy SRL 3 63 31 57 (7/1/88 – 7/1/89), insuring RB&W Corporation, attached as Exhibit 13.

  j. Policy HI 237253 (7/1/88 – 7/1/89), insuring RB&W Corporation, attached as Exhibit 14.[1]

**C. Corporate History**

32. On December 13, 1977, an entity named Russell, Burdsall & Ward, Inc. merged into an entity known as Mangel Stores Corporation.

33. A copy of a March 6, 1978 Certificate filed with the State of Ohio evidencing the December 13, 1977 transaction is attached as Exhibit 15.

34. On March 3, 1978, Mangel Stores Corporation changed its corporate name to Russell, Burdsall & Ward Corporation.

35. A copy of an April 7, 1978 Certificate filed with the State of Ohio evidencing the March 3, 1978 transaction is attached as Exhibit 16.

36. As set forth above, Continental issued six insurance contracts to the Russell, Burdsall & Ward Corporation from 1981 – 1985.

37. On April 24, 1986, the Russell, Burdsall & Ward Corporation changed its corporate name to RB&W Corporation.

38. A copy of a July 16, 1986 Certificate filed with the State of Ohio evidencing the April 24, 1986 transaction is attached as Exhibit 17.

39. As set forth above, Continental issued three insurance contracts to the RB&W Corporation from 1986 – 1989.

40. On December 31, 1998, the RB&W Corporation merged into RBW, the named defendant in the current lawsuit.

41. A copy of a December 31, 1998 Certificate of Merger filed with the State of Ohio evidencing this transaction is attached as Exhibit 3.

42. Upon information and belief, RBW is the successor company to the named insured on the ten Continental policies identified above.

43. When RBW sent its October 15, 2021 Response Letter to IDEM, the cover letter transmitting the Information Request Response identified RBW as the entity submitting the letter. See October 15, 2021 Response Letter at p. 1 (Ex. 2).

---

[1] Policy HI237253 was issued by Harbor Insurance Company, but is now a liability owned by Continental.

5

### D. Claim Correspondence

44. On February 7, 2022, RBW requested insurance coverage for defense and indemnity associated with the Site under Continental Policies SRL 3 63 31 19 and SRL 9 50 09 61.

45. A copy of the Letter from N. Reuhs to Continental Casualty Company dated February 7, 2022 is attached as Exhibit 18.

46. Continental Casualty Company is an affiliated but separate company from The Continental Insurance Company, which issued the above-reference insurance contracts.

47. After searching Continental Casualty Company and The Continental Insurance Company records, Continental wrote to RBW on September 12, 2022 to correct the name of the entity issuing the policies and inform RBW that Continental Casualty Company did not issue any relevant policies.

48. A copy of the Letter from S. McKay to N. Reuhs dated September 12, 2022 is attached as Exhibit 19.

49. Continental denied coverage under all policies identified above. See Id.

### COUNT I
### Declaratory Judgment On Pollution Exclusions

50. Continental repeats and realleges the matters set forth above as if set forth here.

51. The IDEM PRP Letter alleges that RBW is liable for environmental contamination which is alleged to have occurred at the Site. See PRP Letter at p. 2-3 (Ex. 1).

52. Within the RBW Response, RBW contends that this contamination occurred gradually over decades, stating "It is likely that the PAH contamination at the site was released during the period the site was owned and operated by McCray Refrigerator Company, which extended from 1892 to the 1970's." See Response Letter, p. 2 at ¶3 (Ex. 2).

53. RBW acknowledges that IDEM contends that it contaminated the environment through operations of a degreaser at the McCray Site in or around 1982, but denies the allegations. See Id. at ¶4.

54. RBW acknowledges that it purchased a Detrex Degreasing Unit, model 2DCR 650 1VBS, which it intended to install it at the Site, and that this degreaser could use up to 600-700 gallons of TCE a month and 7,800 gallons of TCE a year. See Id., Information Request Response at ¶9.

55. RBW represents that it does not have any witnesses or documents which identify what type of operations RBW conducted at the Site, including how any alleged contamination may have occurred at the property. See Id. at ¶2.

56. RBW represents that it has no information that any leaks, spills or releases occurred as a result of RBW operations at the Site. See Id. at ¶14.

57. Each of the insurance policies issued by Continental which are identified above contain some variation of a pollution exclusion.

58. First, Continental Policies 3 63 29 31 (7/1/81 – 7/1/82), SRL 3 63 29 72 (7/1//82 – 7/1/83), SRL 3 63 30 04 (7/1/83 – 7/1/84), and SRL 3 63 30 34 (7/1/84 – 7/1/85) contain a pollution exclusion which eliminates coverage for environmental liabilities, subject to an exception if there is a sudden and accidental polluting event. These policies provide:

This insurance does not apply:

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

See Ex. 5-8, Comprehensive General Liability Form LIAB 6808, Exclusion (f).

59. Second, Continental Policies SRL 3 63 30 70 (7/1/85 – 7/1/86) and SRL 3 63 31 19 (7/1/86 – 7/1/87) exclude pollution liabilities without any exceptions. These policies provide:

It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises owned, rented or occupied by the named insured;

(b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

(d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

7

      (i) if the pollutants are brought on or to the site or location in connection with such operations; or

      (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

See Ex. 9 and 11 at Pollution Exclusion Form GL 21 33 (Ed. 2-85).

60. Third, Continental Policy SRU 1 89 14 95 (7/1/85 – 7/1/86) has a different variation of an absolute exclusion without exceptions which excludes environmental liabilities, stating:

Exclusion G is amended to read:

This policy shall not apply to Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, oil or other petroleum substances or derivatives (including any oil refuse or oil mixed with wastes), liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

See Ex. 10 at Form LIAB 7251 SET.

61. Fourth, Policy HI 237253 also has a different variation of an absolute pollution exclusion without exceptions which excludes environmental liabilities, stating the insurance does not apply:

To any liability for loss, damage, cleanup cost, expense, fine or penalty, punitive or exemplary damages, personal injuries or property damage of any kind or nature whatsoever incurred by the insured, directly or indirectly, in consequence of, or with respect to the actual or potential discharge, dispersal, disposal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

See Ex. 14 at Endorsement 2, Form HI-9244 (3-87).

62. Finally, Policies SRL 9 50 09 61 (7/1/87 – 7/1/88) and SRL 3 63 31 57 have an absolute pollution exclusion without exceptions which applies to:

   (1) "bodily injury", "property damage or injury or damage of any nature or kind to persons or property arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape or "pollutants",

   (2) any loss, cost or expense incurred as a result of any "clean up" of "pollutants" or

   (3) the investigation, settlement or defense of any claim, suit or proceeding against the Insured, including any payments, costs or expenses associated therewith, alleging such injury, damage, loss cost or expense as described in (1) and (2) above.

   However, this exclusion does not apply to any site or location not owned, rented or occupied by the "Named Insured", on which the "Named Insured" or any contractors or sub-contractors working directly or indirectly on behalf of the "Named Insured" are performing operations, provided that:

   (A) the emission, discharge, dispersal, seepage, release or escape or "pollutants":

   (i) does not occur at or from any site or location used by or for the "Named Insured" or others for the handling, storage, disposal, processing or treatment of "waste"; or

   (ii) does not arise out of the transportation, handling, storage, treatment, disposal or processing of "waste"; at any time, by or for the "Named Insured" or any person or organization for whom the "Named Insured" may be legally responsible.

   (B) such operations do not involve the "clean-up" of "Pollutants".

   (C) the "pollutants" were not brought on or to any site or location in connection with operations performed by the "Named Insured" or any contractors or subcontractors working together or indirectly on behalf of the "Named Insured".

   (D) any loss, cost or expense incurred as a result of any "clean-up" of "pollutants" is not the result of a governmental directive or request, and would otherwise be covered under the provisions of the policy.

   "Pollutants" mean any noise, solid, semi-solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, biological and other etiologic agents or materials, electro-magnetic or ionizing teratogenic, carcinogenic and mutagenic materials, "waste" and any other irritant or contaminant.

"Waste" includes any materials to be disposed, recycled, reconditioned or reclaimed.

"Clean-up" includes the testing for, monitoring, removal, containment, treatment, detoxification or neutralization or "pollutants".

See Ex. 12-13, Absolute Exclusion C-P.

63. Each of these pollution exclusions eliminate coverage for property damage arising out of pollution damage.

64. IDEM alleges property damage arising out of pollution that is directly within the terms of these pollution exclusions in its PRP Letter.

65. Continental seeks a declaration that it does not owe insurance coverage for defense or indemnity under any policy which contains a pollution exclusion.

## COUNT II
### Declaratory Judgment Owned, Occupied or Rented Property Exclusion

66. Continental repeats and realleges the matters set forth above as if set forth here.

67. All Continental policies exclude property damage to property owned, occupied or rented to the insured.

68. Specifically, Continental Policies SRL 3 63 29 31, SRL 3 63 29 72, SRL 3 63 30 04, SRL 3 63 30 34, SRL 3 63 30 70, SRL 3 63 31 19, and SRL 3 63 31 57 exclude:

(y) to property damage

(1) To property owned or occupied by or rented to the insured, or, except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping.

See Ex. 5-9, 11, and 13, Broad Form Property Endorsement Form LIAB 7104A (ADV 3006).

69. Continental Policy SRU 1 89 14 95 contains a slightly different type of the same exclusion, eliminating coverage to "injury or destruction of" "property owned by the insured" or "property rented to, occupied or used by or in the course in the care, custody or control of the insured." See Ex. 10, Form LIAB 7251 SET C-P.

70. Continental Policy SRL 9 50 09 61 also contains a slightly different type of the same exclusion, eliminating coverage for property damage to "property you own, rent, or occupy" and to "That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if

the 'property damage' arises out of those operations." See Ex. 12, Form CG 00 01 11 85 at I.A.2.j(1) and j.(5).

71. Finally, Policy HI 237253 excludes "property damage to property owned by the insured." See Ex. 14 Form HU 6095-P (2-80), Exclusion (g).

72. Within the RBW Response to the IDEM PRP Letter, RBW contends that it did not own the Site, but "it is likely that RB&W was merely a lessor." See Ex. 2, p. 2 at ¶2.

73. To the extent that the IDEM PRP Letter identifies RBW as a party liable for environmental contamination at the Site and RBW either owned, occupied or rented the Site, any property damage by RBW is excluded.

74. In the alternative, if RBW can prove that its operations or other activity at the Site caused property damage to property it did not own, occupy, or rent, then RBW must identify the date that third party damage occurred to specify which among any policies are triggered.

## COUNT III
## Declaratory Judgment on A Lack of a Suit

75. Continental repeats and realleges the matters set forth above as if set forth here.

76. Continental Policies SRL 3 63 29 31, SRL 3 63 29 72, SRL 3 63 30 04, SRL 3 63 30 34, SRL 3 63 30 70, SRL 3 63 31 19, and SRL 3 63 31 57 have a defense obligation that is triggered by a "suit against the insured seeking damages on account of such bodily injury or property damage" that is covered by the policies. See Ex. 5-9, 11, and 13, Comprehensive General Liability Form LIAB 6680B.

77. Likewise, Continental Policy SRL 9 50 09 61 has a defense obligation that is triggered by a suit. See Ex. 12, Commercial General Liability Coverage Form CG 00 01 11 85, I.A.1.a.

78. Finally, Continental Policy SRU 1 89 14 95 and Policy HI 237253 are umbrella policies which only pay ultimate net loss unless underlying coverage does not cover a loss and the umbrella coverage does cover the loss.

79. Specifically, Policy SRU 1 89 14 95 provides to pay "ultimate net loss" which is defined so that "this policy shall not apply to defense, investigation, or legal expenses covered by underlying insurance." See Ex. 10, Form LIAB 7923, I. Coverage and III. Definitions (l) ultimate net loss.

80. Policy SRU 1 89 14 95 also provides, "When underlying insurance exists, the company shall have the right but not the obligation to participate at any time in the defense of any suit against the insured." See Id. at II.

81. The only defense obligation provided by the policy is "When an occurrence is not covered by the underlying insurance listed in the underlying insurance schedule or any other underlying insurance collectible by the insured, but covered by the terms of this policy . . . ." See Id. at II. Even in this situation, the obligation is triggered by a suit. See Id. at II.a.

82. Similarly, Policy HI 237253 is an umbrella policy that has similar language, with Endorsement 18 Form 1003-7 (2-78) defining "ultimate net loss" as "excluding all loss expenses and legal expenses (including attorney's fees, court costs and interest on any judgment or award) . . . ." See Ex. 14. Endorsement 5 Form 1003-7 (2/78) provides that defense is afforded only to an "occurrence not covered by the underlying insurance set forth in the schedule of underlying policies or any other underlying insurance collectible by the insured, but which would be covered by this policy . . . ." See Id.

83. Although RBW has requested defense from Continental, IDEM has not filed a lawsuit against RBW.

84. Continental is not obligated to defend any administrative proceedings that are not a lawsuit.

85. Moreover, under Policy SRU 1 89 14 95 and Policy HI 237253, there is no obligation to defend at all as long as either the underlying policy or any other policy covers the occurrence.

86. Continental seeks a declaration that it does not owe a duty to defend based upon service of a PRP Letter.

## COUNT IV
**Breach of Contract Late Notice**

87. Continental repeats and realleges the matters set forth above as if set forth here.

88. All Continental policies require written notice as soon as practicable and that RBW immediately forward any claim or suit papers.

89. Continental Policies SRL 3 63 29 31, SRL 3 63 29 72, SRL 3 63 30 04, SRL 3 63 30 34, SRL 3 63 30 70, SRL 3 63 31 19, SRL 9 50 09 61, and SRL 3 63 31 57 require "written notice" "as soon as practicable" in the "event of an occurrence." See Ex. 5-9, 11, and 12-13, Revised Notice of Occurrence Form LIAB 7251.

90. These policies provide that "If a claim is made or a suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." See Conditions at 4.b.

91. If RBW assumes any cost, payment, or expense, those matters are at the insured's own cost. See Id. at 4.c.

92. Similarly, Continental Policy SRU 1 89 14 95 requires written notice "When an occurrence takes place which is reasonably likely to involve the insurance afforded hereunder" as soon as practicable. See Ex. 10, Conditions Form LIAB 7923 at 6.

93. Likewise, Policy HI 237253 requires notice when "the insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event the insured should be held liable, is likely to involve this Policy . . . ." See Ex. 14, Form HU 6095-P (2-80), Condition G.

94. Finally, Continental Policy SRL 9 50 09 61 requires prompt notice of an occurrence, prompt written notice of a claim or suit, and also prohibits voluntary payments, expenses, or obligations without consent. See Commercial General Liability Form CG 00 01 11 85, IV.2.

95. Based upon documents in the IDEM record, investigation of environmental contamination at the McCray Site began as early as 2014. See Letter from P. Dorsey to S. Derby dated Oct. 30, 2019 at p. 3 (Ex. 4 hereto).

96. At a minimum, RBW had notice since the PRP Letter was served on September 17, 2021. See PRP Letter Ex. 1.

97. RBW undertook the cost to hire defense counsel to respond to the IDEM PRP Letter as early as October 15, 2021. See Response Letter Ex. 2.

98. RBW did not provide first notice to Continental until February 7, 2022. See Letter from N. Reuhs to Continental Casualty dated February 7, 2022 is attached as Exhibit 18.

99. RBW undertook to assume costs, obligations, or expenses without providing notice to Continental in breach of these policy terms.

100. There is no coverage for any cost, obligation or expense assumed prior to the time that RBW provided notice.

101. In addition, to the extent that the Site has been under environmental investigation since at least 2014, upon information and belief, there has been substantial prejudice to Continental from late notice.

102. RBW has breached the Continental insurance contracts for failure to provide timely notice and by undertaking cost, obligations, or expense without notice.

103. These breaches of the contracts defeat coverage for these alleged damages.

## Prayer for Relief

WHEREFORE, Continental is entitled to judgment on all claims, and to recover such damages, costs, fees, interest, or other relief as the Court may order or the law may require.

Respectfully submitted,

*s/ David W. Walulik*
David W. Walulik (Ohio 076079)
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
(513) 651-6877
dwalulik@fbtlaw.com

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

0119239.0759382 4855-8888-2990v1